Willie May GARNER, Dovie Nowlin, Nyla Beard, and Mary Belle Anderson *v.* Stafford G. KEES, Jr.; Southern Nursing Home, A Partnership; Barbara Crowder; Sandra Enlow, and Janice Roark

92-234                                                    848 S.W.2d 423

Supreme Court of Arkansas
Opinion delivered March 8, 1993

252

*Bell & Associates, P.A.*, by: *Harvey L. Bell* and *John M. Belew*, for appellants.

*Matthews, Sanders, Liles & Sayes*, by: *Marci Talbot Liles*, for appellees.

STEELE HAYS, Justice. This is the appeal from a verdict in favor of the defendants in a suit for the tort of outrage. The appellants are four daughters of Mrs. Mamie Ashlock, deceased. Appellees are the Southern Nursing Home, its owner, administrator, director of nursing and dietary manager.

The lawsuit giving rise to this appeal was brought by daughters of Mamie Ashlock and by her estate. Mrs. Ashlock was a patient at the defendant nursing home when she died. She was admitted to the nursing home on December 3, 1987, and died on April 6, 1988. Because she was a diabetic, Mrs. Ashlock was limited in her intake of sugar.

Appellants originally brought an action against appellees for, a) wrongful death based on the fact that sugar packets were found by the daughters in pockets of Mrs. Ashlock's wheelchair, b) negligence in the treatment of Mrs. Ashlock while she was a patient at the nursing home, c) breach of the contract providing for the care, and d) for the tort of outrage. The named defendants were Stafford Kees, the owner of the nursing home, Barbara Crowder, the head nurse, Sandra Enlow, the dietician, Janice Roark, the nursing home administrator, and the nursing home itself. The trial court granted a motion to dismiss for lack of venue for all causes of action except the tort of outrage and the case proceeded to trial on the remaining cause of action.

The basis of the claim of outrage was that when Sandra Enlow and Barbara Crowder had visited the funeral home, Ms. Enlow placed a sugar packet in Mrs. Ashlock's casket. Ms. Enlow claimed she did this out of affection for Mrs. Ashlock because Mrs. Ashlock always wanted real sugar instead of the "Sweet'n

Low" she was allowed to have. Enlow explained that she and Mrs. Ashlock had a continuing dialogue regarding real sugar versus the "pink stuff." Appellants claimed this act was malicious and caused them severe distress. A jury found in favor of the defendants. Appellants have appealed from the judgment entered on the verdict, challenging three evidentiary rulings by the trial judge. Finding no error, we affirm the judgment.

A motion in limine was filed by appellees regarding evidence appellants intended to introduce concerning alleged wrongful acts by the nursing home staff against parties. The trial judge preliminarily ruled that any alleged mistreatment of patients other than Mrs. Ashlock or occurring prior to her admittance into the home would not be admissible. Only conduct toward Mrs. Ashlock and her family would be allowed, but appellants could proffer any evidence they wished to introduce at trial and he would make a final ruling at that time.

Appellees had alleged Sandra Enlow placed the sugar packet in the coffin out of affection, and appellants were allowed to introduce evidence of treatment of Mrs. Ashlock to rebut this motive. Appellants claim on appeal that tendered exhibits one through six should also have been allowed under A.R.E. Rule 404(B). Rule 404(B) provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that they acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Appellants' exhibits have a common failing. These documents concern patients other than Mrs. Ashlock and were written during a time when she was not a patient. They are simply not relevant to any type of motive on the part of the staff regarding Mrs. Ashlock or her family. Evidence allowed under Rule 404(B) must be relevant and its probative value must outweigh the danger of unfair prejudice. These exhibits, 1, 3, 4, 5, and 6, lack relevance and would only serve to inflame the jury.

Only one exhibit, number 2, was written during Mrs.

Ashlock's stay at the home. It is a letter, dated February 4, 1988, from Mr. Kees (the owner) to Dr. Don Howard (the medical director) informing him that another doctor had been selected for many of the patients. The letter was admitted into evidence except for one line stating that "I am not going to allow the nursing home to be found out of compliance," which was deleted. Arguably, the entire letter lacks relevance, but certainly the deletion of the quoted excerpt cannot be seriously challenged. As appellees point out, the nursing home was found to be in noncompliance in March of 1987, almost a year before Mrs. Ashlock was admitted as a patient. The overall problem with these exhibits is that they were remote in time, did not concern Mrs. Ashlock or the appellants and were clearly prejudicial. It appears the appellants were attempting to introduce evidence of the nursing home's mistreatment and dereliction in the care of its patients in order to generally discredit the appellees. It was not an abuse of the trial court's discretion to disallow the proffered evidence. At issue were Sandra Enlow's attitude and actions toward Mrs. Ashlock and her family. None of the exhibits contained any allegations regarding Sandra Enlow's actions in general, nor toward Mrs. Ashlock in particular. The exhibits were not relevant to the issues in the claim for tort of outrage and would have only served to mislead and prejudice the jury.

Second, appellants contend that Dr. Don Howard should have been allowed to testify about the abuse and mistreatment of patients before December 3, 1987, when Mrs. Ashlock entered the nursing home. Dr. Howard was allowed to testify that while Mrs. Ashlock was a patient he encountered not only problems with staff members but that orders were not being carried out. He stated that many patients were not receiving quality care and that the nursing staff was rude, abrasive and vulgar to patients. He testified that he couldn't say anything about Sandra Enlow because his contact with her was minimal, but that Barbara Crowder was cruel, cold, calculating, callused, nonprofessional, and used obscenities in referring to patients. When Dr. Howard spoke of problems existing prior to December 3, 1987, the court instructed him to confine his comments to the time frame of December 3, 1987, forward.

Appellants now argue that such a limitation on Dr. Howard's testimony prevented the jury from seeing the true

character of the appellees. They contend the testimony was admissible to rebut the appellees' claim that they acted out of affection rather than spite. *See Brown* v. *Conway*, 300 Ark. 567, 781 S.W.2d 12 (1989). We disagree for two reasons: Appellants failed to make a proffer of what Dr. Howard's testimony would have been as required under A.R.E. Rule 103(a)(2) and we have stated that failure to make an offer of proof precludes review of the issue on appeal. *Elliott* v. *Hurst*, 307 Ark. 134, 817 S.W.2d 877 (1991); *National Bank of Commerce* v. *HCA Health Services of Midwest, Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990). Moreover, it is within the discretion of the trial court to limit the testimony of witnesses and that decision will not be reversed absent a manifest abuse of that discretion. *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988). We cannot say appellants have demonstrated an abuse of discretion.

Finally, appellants maintain the proffered exhibits and testimony concerning nursing home conditions prior to December 3, 1987, were admissible to show that appellees Kees and Roark failed to exercise supervisory care over their employees, even after they knew of prior outrageous acts. They claim that Kees and Roark knew they were entrusting the health, care and safety of Mrs. Ashlock and the other residents to employees who had a history of abuse and maltreatment of others.

The appellants rely on *American Automobile Auction, Inc.* v. *Titsworth*, 292 Ark. 452, 730 S.W.2d 499 (1987), in which American Automobile Auction hired two individuals, one as sales director and repossessor of vehicles, and the other as auction ringman and bouncer. The president of the company did not want appellee McPeek to attend an auction and watched as he entered. His employees proceeded to forcibly eject McPeek. Appellee Titsworth attempted to protect McPeek. The employees assaulted McPeek in the auction area. Titsworth then got McPeek away from the area and led him across the street. The employees got a shovel and a bumper jack, went across the street to Titsworth's truck, and severely beat both appellees. McPeek and Titsworth sued the employer under a negligent supervision theory. The court upheld a verdict for the two men, stating that an employer who hires two individuals, one of whom is normally drinking, and entrusts to them the job of forcibly ejecting patrons, has a duty to exercise reasonable care to avoid harm to others

when the employer knows, or by the exercise of reasonable diligence ought to know, that such employees are forcibly ejecting a patron.

Appellees cite the *Titsworth* case for the premise that they should have been allowed to introduce evidence that appellees knew of prior outrageous acts by Crowder and Enlow and failed to supervise them. The trial court was correct in not allowing the evidence to be admitted because the negligent supervision theory has no application to the instant case. As we have seen, there was no connection between the nursing home problems and the act of putting sugar in the casket. Even if it was the acts of Crowder and Enlow which resulted in the nursing home not meeting the necessary standards and Kees and Roark knew of these acts, there is nothing to suggest they knew or should have known that their employees would go to a funeral home and put sugar in a casket. Therefore, the trial court did not err in not allowing the conduct of Crowder and Enlow to be imputed to Kees and Roark.

Affirmed.